**AMENDMENT TO COMMITMENT LETTER AND PAYOFF AGREEMENT**

This Amendment and Payoff Agreement ("Amendment") dated as of August _20_ 2025 is made by and between FilmHedge, LLC ("FilmHedge") and Dania Clarke ("Lender") to amend certain matters with respect to Lender's September 17, 2024 loan made to FilmHedge.

Reference is made to the Commitment Letter entered on September 17, 2024, between FilmHedge and Lender whereby Lender loaned to FilmHedge in the principal amount of Four Hundred Thousand Dollars ($250,000.00) (the "Loan"). The Loan's purpose was to assist with the production of motion pictures (each, a "Picture" and collectively, the "Pictures") as determined by FilmHedge. The Parties acknowledge and agree that the approved Commitment Letter is attached hereto and incorporated herein by this reference as Exhibit "A".

Any capitalized words shall have the same meaning as set forth in the Commitment Letter, unless otherwise defined. For good and valuable consideration, the receipt of which is acknowledged, FilmHedge and Lender agree as follows:

A.  **Lender Acknowledgments.** Lender acknowledges and agrees:

1.  The interest ("Interest") payable to Lender under the Commitment Letter is Forty-Five Thousand Dollars ($45,000.00) as of September 17, 2025. The Loan and the Interest shall be referred to herein as the "Repayment Amount and Interest" totaling Two Hundred Ninety-Five Thousand Dollars ($295,000.00).

2.  Repayment Schedule:

    a.  First Repayment: One Hundred Forty-Seven Thousand Dollars and no cents ($147,500.00) due on September 17, 2025 ("First Payment Date");

    b.  Second Repayment: One Hundred Forty-Seven Thousand Dollars and no cents ($147,500.00) due on October 17, 2025 ("Second Payment Date").

3.  Default and Acceleration: If FilmHedge fails to make any payment in full when due under Section A.2, the entire remaining unpaid Repayment Amount and Interest shall immediately become due and payable in full without notice, demand, or opportunity to cure. Time is of the essence with respect to all payment obligations under this Agreement.

4.  If FilmHedge defaults on any payment obligations set forth in Section A.2, then Lender may declare a default and exercise all rights set forth in this Agreement and/or set forth in the Personal Guaranty of Jonathan Dwayne ("Jon") Gosier, attached hereto as Exhibit "C".

5.  Except for the Repayment Amount and Interest set forth in Section A.2 above, there are no other amounts due to Lender by FilmHedge in connection with the Commitment Letter or otherwise.

1
Dania Clarke/FilmHedge
Amendment

Exhibit "3"

6. Lender shall solely look for payments from FilmHedge and Jon Gosier (as Personal Guarantor) and not from the proceeds of any Pictures.

7. Lender acknowledges that FilmHedge used the proceeds of the Loan in accordance and as required by Lender under the Commitment Letter.

8. Upon repayment of the full Repayment Amount and Interest to Lender in accordance with the payment schedule set forth in Section A.2, FilmHedge will have satisfactorily and successfully met all obligations under the Commitment Letter and this Amendment.

B. **FilmHedge Acknowledgments**. FilmHedge acknowledges and agrees:

1. Lender provided the Loan in its entirety and in a timely manner as required under the Commitment Letter.

2. The Repayment Amount will be repaid by FilmHedge and will not be limited or restricted to the repayment schedule or based on the financial success of the Pictures.

3. FilmHedge shall repay the Repayment Amount to Lender strictly in accordance with the Repayment Schedule set forth in Section A.2.

4. Lender has satisfactorily and successfully met all her obligations under the Commitment Letter.

5. FilmHedge shall pay Lender the Repayment Amount and Interest to Lender's account as set forth in Exhibit "B", which is attached hereto and incorporated herein by this reference.

C. **Mutual Releases**.

1. Subject to Lender's receipt of the full Repayment Amount in accordance with the payment schedule set forth in Section A.2, in consideration of the representations, warranties, and covenants contained in this Agreement, it is agreed that each party on its/her own behalf as well as on behalf of its past and present partners, representatives, independent contractors, shareholders, officers, directors, agents, attorneys, predecessors-in-interest, successors-in-interest, related companies, subsidiaries, parent companies, divisions, affiliates, assigns, and heirs ("Releasors") absolutely, fully, and forever releases, discharges, and covenants not to sue the other parties and their past and present partners, representatives, independent contractors, shareholders, officers, directors, agents, attorneys, predecessors-in-interest, successors-in-interest, related companies, subsidiaries, parent companies, divisions, affiliates, assigns, and heirs from any and all claims, actions, causes of action (at law, in equity, or otherwise), arbitration demands, requests for proceedings, debts, guaranties, warranties (express or implied), balances, liabilities, demands, obligations, costs, expenses, damages, liens of every kind, and any other remedy whatsoever whether known or unknown, suspected or unsuspected, or asserted or unasserted that the parties now have or may have had as of the date of this Agreement against each other by reason of any matter, cause, or thing whatsoever arising out of, based upon, or relating to the Commitment Letter, the Pictures, and any goods or services provided pursuant thereto as well as any matters, causes, or things whatsoever that

2
Dania Clarke/FilmHedge
Amendment

were, have been, or could have been alleged or filed in any litigation arising out of any act or omission relating to the execution, delivery, or performance of the Commitment Letter, except for claims relating to the breach of the obligation of a party under this Agreement.

2.      Notwithstanding the foregoing, this release shall not apply to and specifically excludes: (i) any breach of this Agreement, (ii) any claims based on fraud, willful misconduct, misrepresentation, or material breach of the Commitment Letter that is discovered after the date hereof, (iii) any obligations under the Personal Guaranty executed by Jon Gosier, or (iv) any failure to make payments when due under Section A.2.

3.      Furthermore, upon Lender's receipt of the full Repayment Amount, including interest, in accordance with the payment schedule, absolutely, fully, and forever releases, discharges, and covenants not to sue Jon Gosier (solely in his capacity as CEO of FilmHedge, not as Personal Guarantor), Chandler Heinz Laun, Mickey Vetter, Jonathan Hecht, the production companies of the Pictures and any other individuals related to the Pictures.

**D.      Representations and Warranties.**  The Parties represent and warrant to each other as follows:

1.  Although in negotiating this Agreement each of the parties and their attorneys may have made various statements and representations to the other party(ies) and their attorneys, such party does not rely upon any statement, representation, legal opinion, or promise of the other party(ies) in executing this Agreement or in making the settlement provided for herein, except as expressly stated in this Agreement;

2.  Each party is duly authorized to execute, deliver, and perform this Agreement and has duly executed this Agreement;

3.  This Agreement is a valid and binding agreement of such party and is fully enforceable against it according to the terms of this Agreement;

4.  Each party has been represented by independent legal counsel or has had the opportunity to be represented by counsel and waived such right throughout the negotiations that culminated in the execution of this Agreement and such party has executed this Agreement with the consent and on the advice of such independent legal counsel; and

5.  Prior to the execution of this Agreement and the delivery and acceptance of the consideration specified herein, such party and its respective counsel has had an adequate opportunity to make whatever investigation or inquiry they deem necessary or desirable with respect to the subject matter of this Agreement.

**E.      Indemnities.**  Each party shall indemnify and hold the other harmless from and against any losses, claims, damages, awards, penalties, or injuries incurred by such party (including reasonable attorneys' fees and court costs) that arise from any breach of its representations, warranties, or obligations under this Agreement.

**F.      Counterparts.**  This Agreement may be executed in counterparts, each of which shall be deemed an original and when taken together shall constitute one and the same instrument. Delivery of any executed counterpart of this Agreement by facsimile or transmitted electronically in either a Tagged Image Format File ("TIFF") or Portable Document Format ("PDF") shall be equally effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart by facsimile TIFF or PDF shall also deliver a manually executed counterpart of this Agreement, but failure to do so shall not affect the validity, enforceability, or binding effect of this Agreement.

**G.      Governing Law; Forum.**  This Agreement shall be governed by and interpreted in accordance with the laws of the State of Georgia (without regard to the conflict of law provisions thereof).  Each party consents and submits to the jurisdiction of the state and federal courts located in Fulton County, Georgia.

**H.      Integration.**  No amendment to this Agreement shall be effective, unless in writing and signed by each party hereto.

In witness whereof, the parties hereto have executed and delivered this Agreement as of the date first written above.

**DANIA CLARKE**                                                    **FILMHEDGE, LLC**

DocuSigned by:                                                      Signed by:

*Dania Clarke*                                                     *Jon Gosier*
F849A4FCF2024E3...  _____                                    C24ABC657B304B5...  _____

Date:                                                              By:      Jonathan Dwayne ("Jon") Gosier

8/20/2025                                                          Its:     Managing Member

                                                                   Date:    8/20/2025

4
Dania Clarke/FilmHedge
Amendment

**EXHIBIT "A"**
**COMMITMENT LETTER**

**Original Loan Commitment Letter dated September 17, 2024**

The Original Loan Commitment Letter between Dania Clarke ("Lender") and FilmHedge, LLC ("Borrower") dated September 17, 2024, for a $250,000.00 Credit Facility (the "Loan"), bearing DocuSign Envelope ID: FCFC5419-4F15-42DB-AC0B-CE0FF9C4CF1A, is attached hereto and incorporated herein by reference in its entirety.

Also embedded here for reference.

[See attached]

5
Dania Clarke/FilmHedge
Amendment

Docusign Envelope ID: FCFC5419-4F15-42DB-AC0B-CE0FF9C4CF1A

Date: 9/17/2024

Dania Clark
4861 Prince Edward Street
Vancouver, BC
V5V 3Z1
Canada

Re:     $      250,000.00      Credit Facility (the "**Loan Amount**")

Dear Mr. Gosier:

You have advised [ Dania Clarke         ] ("**Lender**") that you are seeking a commitment for a commitment in the aggregate principal amount of $____250,000.00____ (the "**Loan**"), upon the terms and conditions set forth in this letter (the "**Commitment Letter**").

**Commitment**. Based upon and subject to the terms and conditions set forth in this Commitment Letter, Lender is pleased to advise you of its commitment to make the Loan (the "**Commitment**").

**Terms**. The Lender's commitment to make the Loan is subject to the following terms:

- Max Principal Amount: ____$250,000.00____
- Term: 12 months from the first draw, the principal and interest shall be due.
- Lender's Expected Closing Date ("first draw"): September 18, 2024
- Interest due to Lender: Fixed amount of $ 45,000.00 ( 18 % APY)
- Use of Proceeds: Funding various Film/TV production financings originated by FilmHedge.
- Default: Default interest of 0.75% per month, beginning on 91st day following the maturity date (the 365th day following the first draw date) if the Loan is not paid in full prior to such date, until the date the loan is paid in full.
- Other Considerations: Lender shall have the option to accept a minimum of 1 (one) 'Executive Producer' credit in each co-funded production that can be re-assigned at their discretion.

**Expenses.**   Each party shall bear its own costs and expenses.

**Revocation and Termination of Commitment**.   Time and strict performance are of the essence with respect to all of the terms, conditions and provisions of this Commitment Letter.

**General Terms.**    The terms set forth in this Commitment Letter are intended to be indicative of the principal terms of the Loan, and this Commitment Letter does not purport to specify all of the terms, conditions, representations and warranties, covenants and other provisions

6
Dania Clarke/FilmHedge
Amendment

Docusign Envelope ID: FCFC5419-4F15-42DB-AC0B-CE0FF9C4CF1A

Page 2

that will be contained in the final loan documents.  This Commitment Letter and the closing of the Loan will be subject to such other terms, covenants and conditions as Lender deems appropriate in the exercise of its sole credit judgment. This Commitment Letter supersedes all prior term sheets, discussions, indications of interest and proposals (whether oral or written) previously delivered to Borrower.  This Commitment Letter may not be modified, amended or supplemented, except by a document in writing signed by the parties hereto. Borrower may not assign this Commitment.

**Governing Law; Waiver of Trial by Jury.**    This Commitment Letter shall be governed by and construed in accordance with the laws of the State of Georgia. Each of Borrower and Lender hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim (whether based on contract, tort, or otherwise) arising out of or relating to this Commitment (including, without limitation, the Term Sheet), and the other transactions contemplated hereby or the actions of Lender in the negotiation, performance or enforcement hereof.  This Commitment may be executed in counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one and the same instrument.

We look forward to working with you on this transaction.

Very truly yours,

Dania Clarke

Signature

Dania Clarke

Name (Print)

**ACCEPTED AND AGREED TO:**

As of 9/17/2024

**FILMHEDGE, LLC**

By: Jon Gosier

Name: Jon Gosier

Title: CEO, MediaHedge, Inc (d/b/a FilmHedge)

**EXHIBIT "B"**
**LENDER ACCOUNT**

JORDAN DEVELOPMENT CORPORATION LTD.
1505 2ND AVE W SUITE 401
VANCOUVER
BC CA V6H3Y4

Originator Account:
07604811374

Originator Bank ID:
BOFMCAM2
BANK OF MONTREAL (I.I.P.O.)

8
Dania Clarke/FilmHedge
Amendment

## EXHIBIT "C"
## PERSONAL GUARANTY

IN CONSIDERATION OF, and as an inducement for the granting, execution, and delivery of that certain Credit Facility from Dania Clarke in the principal amount of $250,000.00 (U.S. Dollars) and interest amount of $45,000.00, dated September 17, 2024, (hereafter referred to as the "Credit Facility") between FilmHedge, LLC as Borrower and Dania Clarke as Lender, and in further consideration of the sum of TEN and NO/100ths DOLLARS ($10.00) and other good and valuable considerations paid by Borrower to the undersigned, the receipt and sufficiency of which are acknowledged, **Jonathan Dwayne ("Jon") Gosier** residing at 5724 Kayron Drive; Atlanta; Fulton County; Georgia 30328 **guarantees to Lender** the full and prompt payment of the funds set forth in the Credit Facility, as well as guarantees the full and timely performance and observance of all the covenants, terms, conditions, provisions, and agreements therein provided to be performed and observed by Borrower; and Guarantor covenants and agrees to and with Lender that, if Borrower should at any time default in the payment of any funds or any other such sums due and payable by Borrower under said Credit Facility, or if Borrower should default in the performance and observance of any other terms, covenants, conditions, provisions, and agreements contained in said Credit Facility, then Guarantor shall and will forthwith pay such obligations to Lender and shall and will forthwith faithfully perform and fulfill all of such terms, covenants, conditions, provisions, and agreements and will forthwith pay to Lender all damages that may arise in consequence of any such default by Borrower under said Credit Facility, including, without limitation to, all reasonable attorneys' fees and disbursements incurred by Lender or caused by any such default and/or by the enforcement of this Guaranty.

This Guaranty is an absolute and unconditional Guaranty of payment and of performance. It shall be enforceable by Lender in an action against Borrower, Guarantor, and/or any other guarantors of the Credit Facility, or in a separate and independent action against Guarantor without the necessity for any suit or proceedings on Lender's part of any kind or nature whatsoever against Borrower or Guarantor of Borrower's failure to pay the obligations due under the Credit Facility or of Borrower's default or breach under the Credit Facility or of any other notice or demand to which Guarantor might otherwise be entitled, all of which notices Guarantor expressly waives; and Guarantor expressly agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected, diminished, or impaired by reason of the assertion, or the failure to assert, by Lender against Borrower of any of the rights or remedies reserved to Lender pursuant to the provisions of the Credit Facility or any other remedy or right which Lender may have at law or in equity. Guarantor expressly consents and agrees that any such actions against Guarantor may be brought and pursued against Guarantor in the county or judicial district or circuit in which the Guarantor resides.

This Guaranty shall be a continuing guaranty, and the liability of Guarantor hereunder shall in no way be affected, modified, or diminished by reason of any assignment, renewal, modification, or extension of the Credit Facility or by reason of any modification or waiver of or change in any of the terms, covenants, conditions, provisions, or agreements of said Credit Facility, or by reason of any extension of time that may be granted by Lender to Borrower, or by reason of any unilateral action of either Lender or Borrower, or by reason of any dealings or transactions or matter or thing occurring between Lender and Borrower, including, without limitation, any adjustments, compromises, settlements, accord and satisfactions, or releases, or any bankruptcy, insolvency, reorganization, arrangement, assignment for benefit of creditors, receivership, or trusteeship affecting Borrower, whether or not notice thereof is given to Guarantor, all of which notices Guarantor expressly waives.

Guarantor expressly waives any suretyship defense he may have by virtue of any statute, law, or ordinance of any state or other governmental authority.

All Lender's rights and remedies under the Credit Facility or under this Guaranty are intended to be distinct, separate, and cumulative and no such right and remedy therein or herein mentioned is intended to be in exclusion of, or a waiver of, any of the others. If other agreements similar to this Guaranty are executed from time-to-time by other persons or entities with respect to the Credit Facility, this Guaranty shall be cumulative of such other agreements to the effect that the liabilities of Guarantor hereunder shall be joint and several with those of such other guarantors or sureties, and the liabilities of Guarantor hereunder shall in no event be affected or diminished by reason of any such other agreement.

Guarantor warrants and represents that he has the legal right and capacity to execute this Guaranty and that Guarantor has a direct financial interest in the making of said Credit Facility. Guarantor waives all presentments, demands for performance, notices of non-performance, protests, notice of protests, notices of dishonor, and notices of acceptance.

Lender may, without notice, assign this Guaranty in whole or in part, and/or may assign all or any part of her interest in the Credit Facility, and, in such event, each and every successive assignee of the Credit Facility and/or this Guaranty shall have the right to enforce this Guaranty, by suit or otherwise, for the benefit of such assignee as fully as if such assignee were named herein. Guarantor shall not assign or delegate this Guaranty without Lender's prior written consent.

This Guaranty, and all the terms, covenants, conditions, provisions, and agreements hereof, shall be binding upon and shall inure to the benefit of the respective heirs, executors, personal representatives, successors, and assigns of Lender, Borrower and Guarantor. Words of any gender in this Guaranty shall be construed to include any other gender, words in the singular number shall be construed to include the plural, and words in the plural number shall be construed to include the singular, when the context or sense of this Guaranty requires. Whenever the words "Lender", "Borrower", or "Guarantor" are used herein, they shall be construed to mean, and the terms, covenants, conditions, provisions, and agreements hereof shall be binding upon, not only the named Lender, Borrower, and Guarantor, but also the respective heirs, executors, personal representatives, successors, and assigns of Lender, Borrower and Guarantor. This Guaranty shall be enforced and construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, Guarantor has hereunto set his hand and seal this 20__ day of _August_ 2025.

Signed by:

Jon Gosier

C24ABC657B304B5...

**JONATHAN DWAYNE ("JON") GOSIER**
Guarantor

10
Dania Clarke/FilmHedge
Amendment

Date: 9/17/2024

Dania Clark
4861 Prince Edward Street
Vancouver, BC
V5V 3Z1
Canada

Re:    $    250,000.00    Credit Facility (the "**Loan Amount**")

Dear Mr. Gosier:

You have advised [ Dania Clarke    ] ("**Lender**") that you are seeking a commitment for a commitment in the aggregate principal amount of $    250,000.00    (the "**Loan**"), upon the terms and conditions set forth in this letter (the "**Commitment Letter**").

**Commitment**. Based upon and subject to the terms and conditions set forth in this Commitment Letter, Lender is pleased to advise you of its commitment to make the Loan (the "**Commitment**").

**Terms**. The Lender's commitment to make the Loan is subject to the following terms:

- Max Principal Amount:    $250,000.00
- Term: 12 months from the first draw, the principal and interest shall be due.
- Lender's Expected Closing Date ("first draw"): September 18, 2024
- Interest due to Lender: Fixed amount of $ 45,000.00    ( 18 % APY)
- Use of Proceeds: Funding various Film/TV production financings originated by FilmHedge.
- Default: Default interest of 0.75% per month, beginning on 91st day following the maturity date (the 365th day following the first draw date) if the Loan is not paid in full prior to such date, until the date the loan is paid in full.
- Other Considerations: Lender shall have the option to accept a minimum of 1 (one) 'Executive Producer' credit in each co-funded production that can be re-assigned at their discretion.

**Expenses.**    Each party shall bear its own costs and expenses.

**Revocation and Termination of Commitment**.    Time and strict performance are of the essence with respect to all of the terms, conditions and provisions of this Commitment Letter.

**General Terms.**    The terms set forth in this Commitment Letter are intended to be indicative of the principal terms of the Loan, and this Commitment Letter does not purport to specify all of the terms, conditions, representations and warranties, covenants and other provisions

Page 2

that will be contained in the final loan documents.  This Commitment Letter and the closing of the Loan will be subject to such other terms, covenants and conditions as Lender deems appropriate in the exercise of its sole credit judgment. This Commitment Letter supersedes all prior term sheets, discussions, indications of interest and proposals (whether oral or written) previously delivered to Borrower.  This Commitment Letter may not be modified, amended or supplemented, except by a document in writing signed by the parties hereto. Borrower may not assign this Commitment.

**Governing Law; Waiver of Trial by Jury.**    This Commitment Letter shall be governed by and construed in accordance with the laws of the State of Georgia. Each of Borrower and Lender hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim (whether based on contract, tort, or otherwise) arising out of or relating to this Commitment (including, without limitation, the Term Sheet), and the other transactions contemplated hereby or the actions of Lender in the negotiation, performance or enforcement hereof.  This Commitment may be executed in counterparts, each of which shall be an original, and all of which, when taken together, shall constitute one and the same instrument.

We look forward to working with you on this transaction.

Very truly yours,

DocuSigned by:

*Dania Clarke* _____
F849A4FCF2024E3...

Dania Clarke
_____
Name (Print)

**ACCEPTED AND AGREED TO:**

As of 9/17/2024 _____

**FILMHEDGE, LLC**

DocuSigned by:

By: *Jon Gosier* _____
81E51612EA1F40B...

Name: Jon Gosier _____

Title: CEO, MediaHedge, Inc (d/b/a FilmHedge)